IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE STONE,<br>　　　　Plaintiff<br><br>v.<br><br>LISA BISACCIA, Plan Administrator<br>of the Health Savings Plan for CVS<br>Health, AETNA LIFE INSURANCE<br>COMPANY, and the HEALTH<br>SAVINGS PLAN FOR CVS HEALTH,<br>　　　　Defendants | § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>5:21-cv-690 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Jose Stone brings this case against Aetna Life Insurance Company and the Health Savings Plan for CVS Health (HSP) for benefits under 29 U.S.C. 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA).

In the alternative, Stone brings this case against Lisa Basaccia, (hereinafter Plan Administrator of the HSP) for breaching her fiduciary duties to him by publishing a deficient Summary Plan Description (SPD) of the HSP and failing to adequately advise him of the Medicare benefit reduction that would be applied if he failed to enroll in Medicare, when he was Medicare-eligible, and his employment with CVS was terminated.  He has suffered harm as a result, incurring approximately $70,000 in medical debt for his cancer treatment that he

1

would not have incurred had the Plan Administrator not breached her fiduciary duties to him under ERISA.

## I. PARTIES

1. Jose Stone is a resident of Bexar County, Texas.

2. Defendant Lisa Bisaccia is the Executive Vice President and Chief Human Resources Officer of CVS Pharmacy Inc.  She is the Plan Administrator of the HSP, which is a component part of the CVS Health Welfare Benefit Plan, and is the named Plan Fiduciary.  She can be served at CVS Pharmacy, Inc., One CVS Drive, Woonsocket, RI.  02895.

3. Defendant Aetna Life Insurance Company is an insurance company and claims administrator doing business in Texas.  Aetna was the HSP's claims administrator.  Aetna can be served with citation by serving its registered agent for service of legal process CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas  75201-3136.

4. The HSP is a component part of the CVS Health Welfare Benefit Plan and can be served by serving the Plan Administrator Lisa Bisaccia. She can be served at CVS Pharmacy, Inc., One CVS Drive, Woonsocket, RI.  02895.

## II. JURISDICTION AND VENUE

5. This lawsuit is a claim for benefits under 29 U.S.C. §1132(a)(1)(b) of ERISA, and, in the alternative, a claim for breach of fiduciary duty brought under 29 U.S.C. §1132(a)(3) of ERISA.   This court has jurisdiction over this claim under 29 U.S.C. §1132(e)(1) of ERISA.   Venue is proper in the Western

District of Texas, San Antonio Division, in accordance with 29 U.S.C. §1132(e)(2) as Stone lives in San Antonio and is seeking reimbursement as well as payment to his providers as recovery of benefits due under the HSP or as surcharge relief allowed under §1132(a)(3) of ERISA.

### III. STATEMENT OF FACTS

6. Jose Stone was born and raised in San Antonio. He was born on October 10, 1952. He graduated from Burbank High School and then served in the U.S. Navy for four years. Not long after his service, he attended and graduated from the University of Houston College of Pharmacy and began working as a pharmacist. He started working for Caremark in 1993 and continued to work for Caremark after its merger with CVS in 2007 (becoming CVS Caremark). By November 2018 Stone had worked 25 years with CVS Caremark.

7. In December 2018 Stone had a nasolabial mass that was discovered to be squamous cell carcinoma. He was treated at the University of Texas MD Anderson Cancer Center (MD Anderson) in Houston. During 2019 he underwent surgery for removal of the cancer and then received chemo and radiation therapy. Then he underwent surgeries to reconstruct his nose and mouth. While Stone was a CVS employee, Aetna and the HSP paid at 100% after the required deductible and after Stone reached his maximum out-of-pocket expense (MOOP).

8. Stone was terminated while he was still undergoing cancer treatment and reconstruction surgeries. On October 4, 2019, he received a letter in the mail

from CVS Caremark, notifying him he was terminated effective September 20, 2019. Stone had just turned 67.

9. After he was terminated, Stone elected to continue his health coverage under the HSP, as allowed by the HSP and as required by the Consolidated Omnibus Budget Reconciliation Act (COBRA). During the period from November 2019 until March of 2020, Stone continued cancer treatment at M.D. Anderson in Houston. He underwent six surgeries during this period.

10. In late March 2020, Stone received EOBs from Aetna, the HSP's claims administrator, indicating a significant reduction in the payments made by Aetna on behalf of the HSP. In the remarks section, Aetna stated as follows:

> "We reduced expenses by the amount of Medicare benefits you are eligible for. This applies even if you did not enroll. We estimated the Medicare benefit on this claim. We considered benefits using this amount. The estimated amount is what you owe. For more information about enrollment in Medicare, contact the Social Security Administration......Contact member services if you already enrolled."

This reduction in benefits is the reason for this lawsuit and will sometimes be referred to here as the Medicare benefit reduction.

11. The Medicare benefit reductions were massive. For example, the HSP, through its claims administrator Aetna, paid $5,833.85 for hospital surgical services on 1/23/2020 and left Stone responsible for the remainder, $23,335.39, for that surgical service on 1/23/2020. The reduction was based upon the Medicare benefit reduction.

4

12. After receiving the EOBs, Stone called Aetna repeatedly, inquiring about this health coverage reduction for an illusory payment by Medicare. A number of different Aetna claims personnel told him that the Medicare benefit reductions in the EOBs were a mistake and didn't apply to him. He was told he would not be responsible for paying anything above his deductible and MOOP. Stone assumed that these repeated statements from Aetna claim personnel were correct and did nothing further.

13. Then in August 2020 Stone was told over the phone by an individual with Aetna that the information he was given in his prior calls was incorrect, and that the HSP allowed Aetna to deduct the amount Medicare would pay, even if Stone wasn't enrolled in Medicare. Stone was shocked. That didn't make any sense to him because he elected to pay for continuation coverage with CVS instead of electing Medicare coverage. This was the first unequivocal notice that he received that Aetna was taking the position that under the HSP it had authority to deduct the amount that Medicare would have paid if he was enrolled in Medicare even if he wasn't enrolled in Medicare.

14. On September 10, 2020, Stone received a letter from Aetna reducing coverage for treatment he had received in January of that year based upon the alleged Medicare benefit reduction. This letter was coined a denial of Stone's appeal.

15. Stone submitted a second appeal. He pointed out that Aetna representatives told him repeatedly that the application of a Medicare benefit

reduction was incorrect. Further, he advised that he was unaware that Aetna was requiring that he enroll in Part B of Medicare, a primary fee-based government health program, while simultaneously paying for continued coverage under the HSP. He pointed out that when he enrolled in the plan year 6/1/2019 to 5/31/2020 there was no mention that his benefits could be reduced by a illusory Medicare benefit. Instead, the MOOP and his deductible were prominently displayed as if that would be his maximum exposure if he became ill and needed significant medical treatment.

16. Stone's second appeal was denied by Aetna by letter dated October 23, 2020. The appeal denial identified the many claims for treatment between November 18, 2019 and March 10, 2020 that were reduced by the Medicare benefits reduction, and upheld the decision to reduce benefits by the Medicare benefits reduction. In summary, the denial stated as follows:

> "We are standing by our earlier decision to uphold the Medicare estimation that applied towards the above named services. The reason for this determination is your plan pays secondary to Medicare when you become eligible, regardless if you select the coverage or not (there are two exceptions to this rule: 1. If you are over 65 and are still working and 2. If you have end-stage renal disease, for a limited period). Since you were eligible for Medicare benefits, we process the claims as secondary and estimate what Medicare would pay for the services as primary. Therefore, the above claims were processed correctly."

17. Aetna relied upon the provisions in the Summary Plan Description (SPD) of the HSP to reduce coverage by the Medicare estimated benefit. The SPD of the HSP is the governing plan in regards to coverage and reductions or exclusions of health care coverage for Plan participants. The master plan

document, the CVS Health Welfare Benefit Plan, of which the HSP is a component part, does not address the specifics of health care coverage.

18.  Stone was advised that he had exhausted his right to appeal and his only recourse was to file suit.

19. Stone has exhausted his right and obligation to appeal as required by the HSP and ERISA.

## IV.  CAUSES OF ACTION UNDER ERISA

### Count 1: Cause of Action Against Aetna and the HSP for Benefits Brought Under 29 U.S.C. §1132(a)(1)(B)

20.  The adverse benefit determination by Aetna is based upon language within the HSP's SPD, which also acts as the plan document regarding limitations or reductions in health care coverage and more specifically the Medicare benefit reduction.  The SPD is 120 pages, and the provisions upon which Aetna relied in drastically reducing coverage is found on page 92. This provision is placed within a section entitled "**Coordination with Other Plans**."

21.  The SPD, also the plan document, states as follows:

> "**Effect of Another Plan on the HSP's Benefits**
> If you have coverage under other group plans or receive payments for an illness or injury caused by another person, the benefits you receive from this plan may be adjusted.  This may reduce the benefits you received from the HSP.  This adjustment is known as coordination of benefits (COB).
>
> Benefits available through the other group plans and/or no fault automobile coverage are coordinated with the HSP. 'Other group plans" include any other plan of dental or medical coverage provided by:

> Group insurance or any other arrangement of group coverage for individuals, regardless of whether that plan is insured; and
>
> 'No-fault' and traditional 'fault' auto insurance, including medical payment coverage provided on other than a group basis, to the extent allowed by law.

To find out if benefits under the HSP will be reduced, Aetna must use the rules listed below, in the order shown, to determine which plan is primary (pays its benefits first). The first rule that applies in the chart below will determine which plan pays first:

| If | Then |
|---|---|
| ........... | .............. |
| ........... | ................ |
| You are eligible for Medicare and not actively working | The HSP will pay benefits second to Medicare when you become eligible for Medicare, even if you don't elect it. There are, however, Medicare-eligible individuals for whom the HSP pays benefits first and Medicare pays benefits second:<br><br>  Employees with active current employment status 65 or older and their Spouses age 65 or older; and<br><br>  Individuals with end-stage renal disease, for a limited period of time. |

When the other plan pays first, the benefits paid under the HSP are reduced as shown here:

> The amount the HSP would pay if it were the only coverage in place, *minus*
>
> Benefits paid by the other plan(s).

8

This prevents the sum of your benefits from being more than you would receive from just the HSP."

22. Aetna's interpretation of the HSP is unreasonable as it is contrary to its plain language. Therefore, Stone is entitled to his full benefits after his deductible and MOOP. The HSP authorizes the claims administrator Aetna to reduce benefits by, and only by, "benefits paid by other plans" or if a participant receives payments for an illness or injury caused by another person. The HSP authorizes a reduction when a participant has coverage under other group plans. Stone did not have coverage under Medicare, and Medicare is not a group plan. It is a national health insurance program established by amendments to the Social Security Act, passed by the U.S. Congress in 1965. The language of the HSP that is specific to Medicare (and addresses participants who are no longer CVS employees) states that the HSP will pay "second to Medicare when you become eligible for Medicare, even if you don't elect it." This specific provision as to Medicare makes no sense (and is therefore not enforceable), as one cannot pay second to a party that is not paying anything and has no obligation to pay.

23. Stone contends that the plan language is inadequate to enforce a massive reduction in benefits based upon his eligibility for Medicare. The provision is within a section of the HSP that addresses a "coordination with other benefits." (COB). Coordination with other benefits assumes a participant has other benefits. Aetna did not coordinate benefits; Aetna imposed a penalty, a massive reduction in Stone's health benefits, because Stone was Medicare-eligible,

was no longer an employee of CVS, and did not enroll in the Medicare program. This reduction of coverage had nothing to do with a coordination with other plan benefits. The provision is unenforceable, and Aetna's interpretation of the HSP is contrary to its plain language. Aetna was required to reduce benefits only by benefits paid by another plan under which a participant was covered, and the statement that Aetna is to pay secondary to Medicare when a participant doesn't have Medicare, is non-sensical. This Court should require Aetna and the HSP to pay full benefits without any Medicare benefit reduction. Aetna's interpretation of the HSP was an abuse of discretion.

### Count II. In the Alternative, Stone Requests Equitable Relief Against the Plan Administrator Brought Under 29 U.S.C. §1132(a)(3)

24. In the alternative, in the unlikely event that the Court determines that Aetna's interpretation of the HSP, applied in its final benefit determination, was not an abuse of discretion, then the plan should be reformed due to the HSP Plan Administrator breaching her fiduciary duties to Stone by providing a deficient SPD and in failing to adequately notify Stone of the Medicare benefit reduction when he was terminated from employment.

25. The SPD was never provided to Stone but rather was made available to him, according to CVS, by posting it on "myHR.cvs.com." Also, according to CVS, notices were sent out twice a year, in April and September, that the SPD of the HSP was available online.

26. The SPD is woefully deficient. It does not reasonably apprise Stone and other aging plan participants that they would experience a massive reduction in health benefits if they continued coverage under the HSP after their employment with CVS terminated and they failed to enroll for Medicare when they became eligible.

27. An SPD must be written in a manner calculated to be understood by the average plan participant. Any description of exception, limitations, reductions, must be clear and accurate, and not minimized, rendered obscure, or otherwise made to feel unimportant.

28. The SPD at issue has 120 pages and the Medicare benefit reduction is on page 92. It is within a section of the HSP called "Coordination with Other Plans." This is inaccurate. Medicare is not a benefit plan. Medicare is a national health insurance program established by the Social Security Administration. In the SPD at issue, the massive reduction that occurs if a person is no longer employed by CVS and eligible for Medicare but not does not enroll is rendered obscure by where it is placed. A participant who looks at the Table of Contents of the SPD would never see the word "Medicare" or the phrase "reduction in benefits." All that a participant would see in the Table of Contents is that on page 92 there is "Coordination with Other Plans" and "Effect of Another Plan on the HSP's Benefits." This is a woefully inadequate notice of a massive reduction in benefits.

29. In addition, the Plan Administrator did not meet her fiduciary duty to adequately disclose to Stone and other plan participants who were over 65 and still working, that their health benefits would be drastically reduced if their employment with CVS was terminated and they elected continuation coverage but didn't enroll in Medicare.  Publishing an SPD on the website and advising such participants within a plan section called "coordination with other benefits" does not adequately apprise over-65 participants of the drastic reduction in health benefits that will occur if they elect to continue coverage under the HSP and don't enroll in Medicare.

## V.  RELIEF REQUESTED

### A.  Relief Requested Under Stone's Benefit Claim

30.  In order to protect his credit, Stone has been chipping away at his debt to MD Anderson caused by Aetna's application of the Medicare benefit reduction. To date (as of the end of July, 2021), Stone has paid $14,320 (making payments of $1,432 per month since October, 2020), a sum that should have been paid by Aetna under the HSP.  Stone's remaining balance owed to MD Anderson, the amount that would have been paid by Aetna and the HSP had the Medicare benefit reduction not been applied, is $55,684.36.  Therefore, Stone requests that he be reimbursed $14,320, as well as additional amounts that he pays during this litigation to satisfy his indebtedness caused by the application of the Medicare benefit reduction, and that the Court order Aetna to pay $55,684.36, or whatever the remaining balance is due at the time of judgment, to MD Anderson.

### B. Alternative Relief Requested Under §1132(a)(3)

31. In the alternative, due to the Plan Administrator's breach of fiduciary duty by providing a deficient SPD and not giving over-age-65 participants adequate notice of the Medicare benefit reduction, Stone requests that the plan be reformed so that the Medicare benefit reduction not be applied as to Stone's health benefit claims at issue in this lawsuit. In the alternative, due to the Plan Administrator's breach of fiduciary duty, Stone requests that Aetna be equitably estopped from applying the Medicare benefit reduction to Stone's claims for benefits that are described herein. As part of the equitable relief requested under this section, Stone requests that the Court order the claims to be paid by Aetna without application of the Medicare benefit reduction, and that Stone and MD Anderson be awarded equitable relief, including surcharge relief, as the Court deems appropriate as redress for the injuries caused by the Plan Administrator's breach of fiduciary duty.

### VI. ATTORNEY'S FEES

32. Stone requests reasonable attorney's fees and costs under 29 U.S.C.A. 1132(g).

### CONCLUSION

Wherefore, premises considered, Stone requests that he be reimbursed for amounts that he has paid to MD Anderson as a result of Aetna denying coverage based upon the Medicare benefits reduction. He also requests that Aetna and the HSP be ordered to pay MD Anderson the balance owed as a result of Aetna's

application of the Medicare benefits reduction.  In the alternative, Stone requests that this Court find that the Plan Administrator breached her fiduciary duties to Stone, as elaborated previously, and that the HSP be reformed so that the Medicare benefit reduction provision be eliminated from the HSP, or that Aetna be equitably estopped from denying benefit claims based upon the Medicare benefit reduction.  Stone requests such equitable relief as is appropriate for the Plan Administrator's breach of fiduciary duty.  Stone requests his attorney's fees, and such other and further relief, both at law and in equity, to which he might show himself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce Street, Suite 300
San Antonio, Texas  78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By:   /s/ Jeffrey E. Dahl
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Jose Stone**